# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **EIGHT KHZ, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. W-22-CV-00575-ADA-DTG** |
| | § | |
| **META PLATFORMS, INC., META** | § |  |
| **PLATFORMS TECHNOLOGIES, LLC,** | § | |
| **TWISTED PIXEL GAMES, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER DENYING DEFENDANT'S
## MOTION TO TRANSFER UNDER § 1404 (ECF NO. 46)

Before the Court is Defendants Meta Platforms, Inc., Meta Platforms Technologies, LLC and Twisted Pixel Games, LLC's (collectively, "Defendants") Motion to Transfer Venue to the Northern District of California ("NDCA"). ECF Nos. 46 and 47. Defendants filed the Motion on October 14, 2022, and the parties engaged in months of venue discovery. On April 21, 2023, after months of venue-related discovery, Plaintiff Eight kHz, LLC ("Plaintiff") filed its Response in Opposition to the Motion to Transfer. ECF No 90. On May 5, 2023, Defendants filed their Reply in Support of the Motion to Transfer (ECF No. 93 and 94), and on May 11, 2023, Plaintiff was granted leave to file a Sur-Reply (ECF No. 101). On July 18, 2023, the Court held oral arguments on the Motion, and subsequently ordered supplemental briefing as to whether the threshold question—whether the action might have been brought in NDCA—was satisfied for Defendant Twisted Pixel Games, LLC ("Twisted Pixel"). That supplemental briefing was complete on August 4, 2023, when Defendant filed supplemental briefing (ECF No. 125), to which Plaintiff responded (ECF No. 127), and Defendant filed a reply (ECF No. 131). It has taken nearly a year for the parties to complete briefing on Defendants' Motion.

After a careful review of the pleadings and consideration of the oral arguments made by Counsel, the Court **DENIES** Defendant's Motion to Transfer.

## I. BACKGROUND

In this patent infringement case, Plaintiff alleges that Defendants infringe U.S. Patent Nos. 9,282,196; 9,674,628; 10,448,184; 10,917,737; 9,226,090; 10,368,179; 10,798,509; 11,172,316; and 11,2980,836 by making, using, selling, offering for sale, or importing the "Oculus Go, Oculus Rift S, Oculus Quest, Oculus Quest 2," and "the 'Cambria' device" (officially known as Quest Pro) (collectively, the "accused products"). ECF No. 45 ¶¶ 91, 96. Plaintiff's First Amended Complaint alleges that the accused products infringe based on (1) the "spatial audio" feature in combination with any gaming applications; (2) the "safe area" or "Guardian" System in combination with any gaming applications; or (3) "spatial audio" in combination with the "Workrooms" feature's specific functionality (collectively, the "accused features"). ECF No. 45 ¶¶ 91-92.

Defendants note that this Court previously transferred another Meta case involving Oculus products to the NDCA and argue that this case should be transferred "for the same reasons." ECF No. 46 at 10, citing *Gentex Corp. v. Meta Platforms, Inc*., No. 6:21-cv-00755, Dkt. No. 78 (W.D. Tex. June 30, 2022). Defendants contend that the only new feature in this case is the "spatial audio" aspect, which Defendants claims does not alter the venue calculus. *Id.*

Plaintiff unsurprisingly disagrees. Plaintiff argues that the prior decision was a "close call" whereas the record here is "much worse for Defendants." ECF No. 90 at 2. According to Plaintiff, the "single-most important witness" (the "legendary John Carmack") is now a non-party residing in Dallas and within the subpoena power of WDTX but not NDCA. Further, the Texas based witnesses are intimately involved with accused functionalities of the products at issue in this case,

and each factor that favored transfer in *Gentex* now weighs against transfer. Finally, Plaintiff has named an exclusively WDTX-based Defendant, Twisted Pixel. ECF No. 90 at 2. With that background, the Court considers the thoroughly developed record in this case on its own merits and finds transfer unwarranted.

## II.  LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the 5th Circuit. *In re TS Tech USA Corp*., 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The moving party must demonstrate that the alternative venue is *clearly* more convenient to succeed. *Volkswagen II*, 545 F.3d at 314–15; *IOENGINE, LLC v. Roku, Inc.*, No. W-21-CV-1296-ADA-DTG, 2022 U.S. Dist. LEXIS 192199, at *6 (W.D. Tex. Oct. 10, 2022) (quoting *Volkswagen*, 545 F.3d at 314-15) (emphasis added).

The Court takes a two-step approach to evaluating a convenience transfer motion. The first—preliminary—step under Section 1404(a) requires determining "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). The second step—if the destination venue would have been a proper venue—requires evaluating "a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access

to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation that existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is *clearly* more convenient. *Id.* at 314–15; *IOENGINE, LLC v. Roku, Inc.*, No. W-21-CV-1296-ADA-DTG, 2022 U.S. Dist. LEXIS 192199, at *6 (W.D. Tex. Oct. 10, 2022) (quoting *Volkswagen*, 545 F.3d at 314-15).) (emphasis added). As the Fifth Circuit has noted, there is always some inconvenience that is "expected and acceptable," and it is not enough that it would be convenient for a defendant to litigate elsewhere. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022). Rather, the movant must "clearly establish good cause for transfer based on convenience and justice." *Id.* (citing *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)). While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III. ANALYSIS

Taking the venue steps in order, we begin with a determination of whether venue would be proper in the transferee district. Plaintiff filed this case against three Defendants: (1) Meta Platforms, Inc., (2) Meta Platform Technologies, LLC, and (3) Twisted Pixel Games, LLC. ECF No. 46 at 3. Defendants refer to the first two entities collectively as "Meta Platforms" or "MPI" and all three entities as "Meta." *Id.*

Plaintiff is a Wyoming (WY) Limited Liability Company with its principal place of business in Lander, WY. ECF No. 45 ¶ 1. Defendants state that Meta maintains its headquarters and principal place of business in NDCA since 2004, and ███ of Meta's U.S.-based employees work in NDCA. ECF No. 46 at 3. Oculus VR, Inc. was founded in Southern California and in 2014, Meta Platforms acquired Oculus VR, Inc. ECF No. 46 at 3. Oculus VR's name changed to Oculus VR, LLC, then to Facebook Technologies, LLC in 2018, and then to Meta Platforms Technologies, LLC in 2022. *Id.* Meta Platforms owns various VR related brands, including Defendant Twisted Pixel Games, which creates VR games sold by Meta in its Oculus Store. *Id.* Meta employees working on Meta's virtual reality products are part of Meta's Reality Labs organization. *Id.* Approximately ███ of Meta's US based employees in Reality Labs are in NDCA, and ██ are based in Texas. *Id.*

Twisted Pixel Games, LLC is wholly owned by MPI following its acquisition by MPI in 2021. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ In its Amended Complaint, Plaintiff asserted that Twisted Pixel is "fully and effectively controlled by Meta Platforms." ECF No. 45 ¶ 4 Meta did not dispute that allegation in its answer. ECF No. 49 ¶ 4.

Meta contends that this case could have been brought in the Northern District of California ("NDCA") because "Meta maintains its headquarters in NDCA, is subject to personal jurisdiction there, and committed alleged acts of infringement there." ECF No. 46 at 10. That was the extent of Meta's discussion of the threshold question. Plaintiff did not contest these assertions as to the Meta defendants but claimed that Twisted Pixel is an "an exclusively WDTX-based defendant… that developed an Accused Product in the WDTX with nearly all sources of proof of that Accused Product, Path of the Warrior, in the WDTX." ECF No. 90 at 2. At the oral argument, the question of whether Twisted Pixel satisfied the threshold inquiry was unsettled, and the Court granted Defendants' request for supplemental briefing on the issue. As the § 1404 movant, Defendants bear the burden of demonstrating that the transferee forum is a district where the "civil action" "might have been brought" for *all* Defendants. *See In re Canon Inc*., No. 2022-130, 2022 WL 1197337, at *3 (Fed. Cir. Apr. 22, 2022); *see also Blue Spike, LLC v. Tex. Instruments, Inc.,* No. 12-cv-499, 2014 WL 11858192, at *3 (E.D. Tex. Mar. 18, 2014) ("The movants bear the burden of establishing [that the civil action 'might have been brought' against] all defendants—including third-party Defendants—in the transferee forum").

The supplemental briefing confirms that venue is not proper for the Twisted Pixel Defendant in NDCA. Defendants' only argument that venue could be proper would require this court to impute Meta Platforms, Inc.'s NDCA contacts to Twisted Pixel under the jurisdictional *alter ego* test. ECF No. 125 at 1. To impute the contacts of a related company to a defendant for the purposes of venue, the lines between the defendant and the related company must "become so

blurred that the two become one." *WSOU Investments LLC v. Canon, Inc*., No. 6:20-cv-00981, Dkt. No. 137 at 13 (W.D. Tex. Feb. 25, 2022) (citing *Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 595 (E.D. Tex. 2019)). The test for jurisdictional alter ego is less rigorous than the test for liability alter ego. *Hargrove v. Fibreboard Corp*., 710 F.2d 1154, 1161 (5th Cir. 1983) (Courts should "apply[] a less stringent standard for alter ego jurisdiction than for alter ego liability."). Courts consider a number of factors in determining whether such a relationship exists for jurisdictional purposes, including:

> (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; [and] (12) the subsidiary does not observe corporate formalities.

*United States v. Jon-T Chems., Inc*., 768 F.2d 686, 691-92 (5th Cir. 1985).

The parties dispute application of the alter ego test. Defendants argue that the jurisdictional alter ego test is satisfied and claims the record evidence enumerated above "confirms that MPI and Twisted Pixel should be treated as the same entity for venue purposes." ECF No. 125 at 4. Plaintiff claims Defendants have failed to meet their burden of showing a factual basis exists for this alter ego claim and argues Defendants cannot disregard their own corporate formalities for their strategic benefit in this lawsuit. ECF No. 127 at 1. "Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent." *Administrators of Tulane Educational Fund v. Ipsen, S.A.,* 450 Fed. Appx. 326, 331 (5th Cir. 2011). Because Twisted Pixel is incorporated as its own limited liability company in Nevada (since 2011, in a state other than

Meta's place of incorporation), Plaintiff argues that Twisted Pixel can only be sued for patent infringement under 1400(b) in this District or Nevada. ECF No. 127 at 1. Plaintiff further notes that Defendants "rely on Twisted Pixel's corporate form to shield it from consumer claims: the liability for the games flow only from TP Games LLC (not Meta)," "TP requires its customers to sue it only in Travis County, Texas," and "TP's Privacy Policy identifies TP as a separate entity, and likewise purports to shield Meta from exposure for privacy breaches." *Id*. at 1-2. Plaintiff argues Defendants should not raise the equitable doctrine of alter ego when they have "acted inequitably by using TP's corporate form as a shield against consumers but a sword against Plaintiff." *Id*.

Plaintiff also disagrees that the evidence is sufficient to prove alter ego. While Defendants rely on a declaration by Mr. Melim purporting to show ███████████████████████ Plaintiff notes that job listings on the Twisted Pixel website refer to the positions as being with "Twisted Pixel" and not Meta. ECF No. 127 at 2. Plaintiff also disputes Mr. Melim's notion that ████████████████████████ show alter ego because "a parent providing central administrative functions for its subsidiaries is common in large corporate groups and is typically handled as an intercompany contract or similar arrangement" and Meta's 10-K admits to having inter-company arrangements. *Id*. Similarly, Plaintiff claims that the mere fact ███████████ ████████████████████ does not mean Meta ignores the corporate formalities of Twisted Pixel but rather notes that ████████████████████ are "common in large corporate groups, and expressly provided for in U.S. Treasury Regulations." *Id*. at 3. Plaintiff also note that ███████████████████ operate from Twisted Pixel's headquarters in Texas. Furthermore, Plaintiff claims that "even though TP is fully controlled by its owner Meta, it is still a distinct organization within the Meta group of companies and is held

out to the public as such" and the Facebook and Instagram pages make no mention of Meta, while the website "has only oblique references to Meta." *Id*.

Considering the evidence provided in this case, the Court is not persuaded that it should disregard corporate formalities, invoke an alter ego theory, and impute the Meta's contacts with the forum to its subsidiary, Twisted Pixel. Even using the less stringent standard for alter ego jurisdiction than for alter ego liability, the Court believes Defendants have failed to meet their burden to show that the two entities are "fused" or "the same entity." *See Hargrave v. Fibreboard Corp*., 710 F.2d 1154, 1160 (5th Cir. 1983) ("Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes."); *see also Administrators of Tulane Educ. Fund v. Ipsen, S.A*., 450 Fed. Appx. 326, 332 (5th Cir. 2011) ("Plaintiffs bear the burden of establishing that Ipsen's control over Biomeasure's budget is such that they functionally became the same entity.") (internal quotation omitted). The Court finds that Meta observes corporate formalities with Twisted Pixel on several levels, such as the still active incorporation of an LLC in Nevada—a state other than Twisted Pixel's parent company, and where it has been incorporated since 2011. Furthermore, this Court has already found many of the factors Meta relies on as being insufficient to carry the heavy burden of establishing alter ego status. *See Natl. Steel Car Ltd. v. Greenbrier Companies, Inc.,* No. 6:19-CV-00721-ADA, 2020 WL 4289388, at *4 (W.D. Tex. July 27, 2020) ("the Court further finds the above facts support no finding of alter ego for GRS when considering the factors of whether: the parent finances the subsidiary; the parent pays salaries and other expenses of the subsidiary; the subsidiary receives no business except that given by the parent; and whether the daily operations of the two corporations are kept separate.") The record is also devoid of the significant or clear evidence that would be required for this Court to disregard the heavy

presumption that comes with awarding Meta this requested equitable remedy. As this Court recently noted in *National Steel Car Limited.*, "[t]he Court is hesitant to allow plaintiffs to manufacture proper venue through the use of an equitable remedy." 2020 WL 4289388, at *3 (W.D. Tex. July 27, 2020). As such, the Court finds this case could not have been brought against Defendant Twisted Pixel, and the inquiry could stop there.

Had Twisted Pixel not been a party to this case, an analysis of the public and private interest factors shows that NDCA is not a *clearly* more convenient locale under the facts of this case.

### A.  Relative ease of access to sources of proof.

Turning to the first private interest factor, the Court analyzes the relative ease of access to sources of proof. In assessing this factor, "a court looks to where *documentary* evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019) (emphasis added). As the Fifth Circuit has stated, "[t]he location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (citing *In re Volkswagen*, 545 F.3d 304, 316–17 (5th Cir. 2008)).

Defendants claim that ███████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████████████████ ECF No. 46 at 9. They claim that ███████████████████████████████████████████████████████████ ████████████████████████████████████████████ ECF No. 46 at 9. Defendants also assert that ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████ ECF No. 46 at 9.

Plaintiff argues that Defendants have not met their burden on this prong because they have failed to provide any evidence that any *specific* relevant physical or electronic documents are actually located in NDCA. Plaintiff notes that █████████████████████████████ is located in WDTX, Defendants' documents are generally accessible everywhere, ████████████ ██████████████. The movant must make "an actual showing of the existence of relevant sources of proof[,]" not the mere possibility. *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022). Plaintiff notes that Defendants were artful in describing NDCA as a location that had individuals who ████████████████████████, stating that Defendants' documents were as ████████████████████████████████████████ ECF No. 90 at 3. Plaintiff notes that ████████████████████ ████████████████████████████████████████ ████████████████████████████████████. ECF No. 90 at 4. Plaintiff claims that "[t]he geographic location ████████████████████████ ████████████, even now, ████████████████████ ████████ ECF NO. 90 at 4.

The Court agrees that Defendants have not identified specific sources of proof that are more readily accessible in NDCA. "[T]he question under the first factor is "*relative* ease of access, not *absolute* ease of access." *In re TikTok, Inc*., 85 F.4th 352, 359 (5th Cir. 2023) (citing *In re Radmax, Ltd*., 720 F.3d 285, 288 (5th Cir. 2013) (per curiam). Defendants' generalizations are not particularly helpful, especially since they provide ████████████████████████, and their witnesses testified that ████████████████████████ ECF No. 90 at 4. Defendants' generalizations do not meet their burden under *Defense Distributed*. Moreover, "where documentation *will be collected* is not relevant and therefore has no bearing on this factor,"

as that only invites gamesmanship. *Gentex*, 2022 WL 2654986, at *3 (emphasis in original). Plaintiff, for its part, points to relevant ███████████████████████████ in WDTX. ECF No. 90 at 5. ████████████████████████████████ ██████████████████████████████████████████████. *Id*. This is unlike the situation in *TikTok, Inc*. "████████████████████████████████ ████████████████████████." 85 F.4th at 359. ██████████████████ ████████████████████████.

In sum, the Court finds that there are specific sources of proof available in WDTX, and even if the Court assumed there are sources of proof within NDCA, on balance, this factor fails to support transfer.

**B.  The availability of compulsory process to secure the attendance of witnesses.**

The Court next turns to the second factor—the availability of compulsory process to secure the attendance of witnesses. "Unlike the willing witness factor, the compulsory process factor is more about the convenience of the litigating parties in making their case rather than the convenience of the unwilling witnesses compelled to testify." *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021). The second factor focuses on "the availability of compulsory process to secure the attendance of witnesses." *Volkswagen*, 545 F.3d at 315. This factor favors transfer where "non-party witnesses . . . are outside the [Western] District's subpoena power" and "a proper venue that does enjoy absolute subpoena power for both depositions and trial" is available. *Id*. at 316 (cleaned up). "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630–31 (internal quotation marks omitted).

Defendants allege that "Meta is unaware of any third parties in this District with any relevant connection to this case." ECF No. 46 at 9. They fault Plaintiff for naming "former Meta employees" in the First Amended Complaint, without providing any specifics. ECF No. 45 ¶ 43. Defendants identify a group of prior artisans, a prior art inventors Steven Osman, Todd Tokubo, Jeffrey Stafford, Crusoe Mao, and Glenn Black who are all located in NDCA and employed by Sony Interactive Inc., which is headquartered there. ECF No. 46 at 9. Defendants identify Durand Begault and Mike Alger, who are NDCA authors of prior art publications. Defendants also identify David Sawyer "and other inventors" of a prior art patent application that reside in Washington. *Id.* at 10. Finally, Defendants identify one former Meta employee, Amish Babu, ███████████ ████████████████████████████████████████████████████ *Id.*

Plaintiff identifies at least eight witnesses that are within the subpoena power, including those from Defendants' own asserted prior art towards invalidity. ECF No. 90 at 7. Plaintiff claims that the need for these eight outweighs the need of Defendant's seven NDCA prior art witnesses since five of the seven identified are named inventors on the same pair of patents and would thus be cumulative. *Id.* Plaintiff asks the Court to disregard David Sawyer and any other Washington residents since they will be outside the scope of either Court's subpoena power. The Court agrees that the presence in Washington (which is neither forum) is not accorded much weight.

As for the former Meta employee, Mr. Babu, Plaintiff argues whatever relevance he may have is dwarfed by the presence of Dallas-based (and thus within the subpoena power of WDTX) John Carmack. Mr. Carmack is the former Chief Technology Officer of Oculus, who has been noted by this Court to have "led the technological development of Oculus's virtual reality products, including foundational technology likely carried into the Accused Products" and whose work has "high relevance" in cases involving Oculus "for purposes of establishing the state of previously

existing technology and the valuation of the Asserted Products." *Gentex*, 2022 WL 2654986, at

*1. In that case, Judge Albright found that "[g]iven his history in developing foundational virtual

reality technology and celebrity-like status in the virtual reality community," he is "an

exceptionally important witness" in a case involving the Oculus technology. *Id*. at *7. Plaintiff

says that Mr. Carmack could testify on several crucial issues in the case and is far more

knowledgeable than Mr. Babu. Babu was ███████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████s. ECF No. 90 at 6-7. Carmack, on the other hand, ████████████████

███████████ and according to Plaintiff, is

"certainly the most important witness in this case and is not subject to the subpoena power of

NDCA." Plaintiff points out that Mr. Begault has been retained by Defendants and should not be

given much weight (if any) for transfer analysis, which would leave "only three presumed-

unwilling, non-cumulative prior art witness" in NDCA.

The Court agrees that, of all the witnesses identified, Mr. Carmack would likely have the

most relevant knowledge in this case. The Court also notes that there is some degree of

cumulativeness to the prior artisans that Defendants identify. Given the importance of Mr.

Carmack, and the slightly larger numbers of potential unique non-party witnesses in the WDTX

that could only be subpoenaed from WDTX, the Court finds that this factor weighs against transfer.

## C. Cost of attendance for willing witnesses.

Next the Court turns to the third private interest factor—the cost of attendance for willing

witnesses. *In re Volkswagen AG*, 371 F.3d at 203. This factor has been stated by the Federal Circuit

Court of Appeals as being "the relative convenience of the two forums for potential witnesses."

*See In re Juniper Networks*, 14 F.4th 1313, 1316 (Fed. Cir. 2021). This has been described as "probably the single most important factor in transfer analysis." *Id.* at 1318 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)). As the Fifth Circuit Court of Appeals has recently noted, "Our circuit uses a '100-mile threshold' in assessing this factor. 'When the distance between an existing venue for trial ... and a proposed venue under § 1404(a) .is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *In re TikTok, Inc.*, No. 23-50575, 2023 WL 7147263, at *5 (5th Cir. Oct. 31, 2023) (citing *Volkswagen*, 545 F.3d at 315).

Defendants assert that "[t]here are no likely witnesses in WDTX, and the vast majority would find NDCA more convenient, including potential witnesses along the West Coast." ECF No. 46 at 11. Plaintiff's FAC alleges that the "Reality Labs" organization "produces virtual reality (VR) and augmented reality (AR) hardware and software," (ECF No. 45 at 7 n. 7), but Defendants argue the ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ECF No. 46 at 11-12. Defendants argue that between the teams responsible for the accused functionalities in the Quest products—**Spatial Audio, the Guardian System, and Workrooms**— ███████████████████████████████████████████████████████████ ████████████████ ECF No. 46 at 6.

As for **Spatial Audio**, Defendants contend that ███████████████████████████ ██████████████████████████" ECF No. 46 at 12. They then identify "the teams principally responsible for the accused 'spatial audio' feature (audio that mimics real world acoustics, by, e.g., making audio sound as if it is coming from a specific location in a virtual environment) are: ████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ ECF No. 46 at 4. Defendants claim ████████████

██████████████████████████████████████████████████████████

████████ *Id.* Defendants ██████████████████████████████████

████████████████████████████████████████████.[1] *Id.* Defendants allege that

additional team members are predominantly located ██████████████████████████

████████████████ *Id.* at 4-5. Defendants also note that Plaintiff's First Amended Complaint cites a

paper written by three Meta engineers, Carl Schissler, Aaron Nicholls, and Ravish Mehra. ECF

No. 45 Ex. L at 3, Ex. O at 3. Nicholls and Mehra are located in ████████, while Mr. Schisser

is located in ██████████.

As for the **Guardian System**, Defendants argue "the Guardian team is almost ████████

████████████████████████████ ECF No. 46 at 5. The Guardian team ████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████. However,

according to Defendants, all work ██████████████████████████ deeming his

knowledge cumulative ██████████████. *Id.* at 5, 12. Defendants identify ████████

████████████████████████████████████████████ *Id.*[2]

---

[1] Those individuals are █████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████ ECF 46 at 6.

As for the **Workrooms,** Defendants claim "[t]he relevant witnesses include the same teams responsible for spatial audio." ECF No. 46 at 6. Defendants also identify the Workrooms VR team, which is ███████████████████ and ██████████████████████████ ████████████████████████████████████████ ████████████████████." *Id.*

Defendants also fault Plaintiff for alleging infringing products in its FAC and Preliminary Infringement Contentions "in an attempt to create ties to Texas" as there is "no application-specific functionality or unique features of these applications" and any application would likewise infringe in the same manner. ECF No. 46 at 7. Path of the Warrior was developed by Twisted Pixel Games, which is now part of Meta. ECF No 46 at 7, ECF No. 93 at 5-6. The FAC identified Frank Wilson, Bill Muehl, and Charles Bear previously of Twisted Pixel, now employed by Meta, who reside in Austin, Texas, but Defendants allege they didn't work on infringing features. ECF No. 45 ¶ 18. Finally, Defendant notes "the large majority of finance and marketing employees" are located in ████████████████████████████████████. ECF No. 46 at 8.

Plaintiff asks the Court to give little weight to Defendants' contention that California-based witnesses outnumber relevant and material Texas-based witnesses, because: "(1) Defendants' declarant spoke to no one in Texas, (2) Defendants drove up the number of California witnesses by citing team members likely to have cumulative knowledge, and (3) Defendants focused their list of 'relevant and material' witnesses on coders and programmers without providing a factual justification for doing so." ECF No. 90 at 14.

As to Plaintiff's first point, Plaintiffs argue "Defendants' failure to investigate is beyond reasonable dispute." ECF No. 90 at 1. In his deposition, Andrew Melim, Defendants' venue

declarant ███████████████████. ECF No. 90 at 1. He also admitted ████████████

███████████████████████████████████████████████████████

█████████████████████████████████. *Id.* ███████████████

██████████████████████████████ ECF No. 90 at 8. Plaintiffs claim they

uncovered this "misrepresentation" in venue discovery when they deposed Jonathan Atkins, a

witness Plaintiff believes to be material. *Id.* at 9. In Mr. Melim's declaration, ██████████

███████████████████████████████████████████████████████

████████████████████████████████. *Id.* Plaintiff also insinuates

that ███████████████████████████████. Plaintiff points to deposition

testimony showing ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████. *Id.* Plaintiff asks the Court to draw the inference that counsel drove this venue

investigation and requests the Court to "resolve all questions regarding the relevance and

materiality of Texas-based witnesses identified by Plaintiff." *Id.*

     As to Plaintiff's second point, Plaintiffs argue that Defendants manipulated California

party witnesses by listing more than 10 entire teams of employees, who would almost certainly

possess cumulative information. ECF No. 90 at 10-11. Plaintiffs note that Meta has previously

identified over 100 potential employee witnesses, but once trial occurred, that number dwindled

to 9 live witnesses with 3 serving as experts. *Id.* Plaintiff notes that it would be "unnecessary to

call multiple people from the same team, given ████████████████████████████

████████████████████████████████████████." *Id.* at 12, citing ECF

90-7 at 153:1-154:7.

As to Plaintiff's third point, it argues that Defendants' programmers and source coders are not likely witnesses in this case. ECF No. 90 at 13. Defendant notes that certain people are irrelevant because they did not develop the ██████████████████████████████████ ████████████████████████ ECF No. 46 at 8. Plaintiff notes that the majority of witnesses identified are code writers, and Defendant discounts non-code writers. *Id.* Plaintiff does not disagree that the code will be necessary to review and demonstrate infringement, but ███████ ███████████████████████████████████████████████████████████ ████ *Id.* at 14. Plaintiff says Defendant has not shown why only code writers are relevant in this case, and that the burden was on them to do so.

Finally, Plaintiff identifies Texas-based witnesses it says will provide "relevant and material information in this matter." Id. at 14. It identifies Jonathan Atkins, ███████████████ ████████████████████████████████ who works in this district. ECF No. 90 at 14. Mr. Atkins ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ *Id.* at 14-15. Mr. Atkins also ████████████████████████████████████████████████████ ██████████████████████████ *Id.* Plaintiff also identifies ███████████████, a Dallas based Meta employee ████████████████████████████, which Plaintiff notes is "the earliest accused functionality/product for the `509, `737, and `316 Patents." *Id.* Plaintiff claims that "███████ of preeminent importance to trial." *Id.* Plaintiff also states it "plans to call Frank Wilson…████████████████████████████████ and is located in Austin, Texas." *Id.* at 15. ████████████████████████████ Plaintiff believes "With over a decade of experience in developing games at Twisted Pixel, there is no

individual better positioned to testify to the extent that Path of the Warrior infringes on the asserted patents." *Id*. Lastly, Plaintiff notes several other potential witnesses listed in the exhibits attached to the pleadings that show Texas based workers ████████████████████████████████

████████. *Id*. at 16.

Plaintiff also demonstrates that WDTX is more convenient for its own witnesses. Messrs. Lyren and Norris, Plaintiff's principals reside in Buenos Aires and Puerto Rico, locations which have direct flights to DFW, but not San Francisco. Plaintiff asserts that the travel time and convenience would be less in WDTX. *Id*. at 17.

On balance, the Court finds this factor to be neutral. The Court agrees that Defendants' witness counts are undoubtedly cumulative, especially when they include entire teams of individuals and rely heavily on source code writers. As Plaintiff notes, the number of witnesses who will actually appear in a patent case is significantly smaller than the numbers Defendants proffered in this Motion (whether it be in NDCA or WDTX).[3] Nonetheless, the Court believes there is likely to be at least some of those witnesses from Defendants where NDCA would be a more convenient forum. However, Plaintiff has *also* identified several witnesses from Defendants, which it plans to call and has shown to have some material information, for which WDTX would be a more convenient location. Plaintiff has demonstrated that WDTX would be more convenient for its own witnesses. On the whole, the Court is left with a handful of witnesses that would be more convenient in WDTX and a handful that would be more convenient in NDCA.

---

[3] See ECF No. 90 at 11 ("the average number of live witnesses specified as 'will call' by defendants at recent patent trials in NDCA has been 5.27 witnesses with a standard deviation of 2.32, including 2.67±1.25 expert witnesses and 2.60±1.78….For WDTX, the average has been 4.89±2.02…")

Finally, the Court notes that Defendants' venue declarant, and his accompanying declaration, indeed lack hallmarks of the credibility expected by the Court. The declarant's inability to explain how certain information made it into his declaration, coupled with his insufficient investigation of Texas witnesses and (at best) misstatements of Mr. Atkins suggest a more thorough investigation could have been conducted. In light of such shortcomings, the Court finds Defendant's declarant to have diminished credibility. The Court need not rely on the credibility of Defendants' declarant in analyzing this factor, because as noted above, the Court finds the factor neutral with willing witnesses favoring both venues. Considering Defendants' witness credibility would only further disfavor transfer.

### D.  All other practical problems that make trial of a case easy, expeditious and inexpensive.

Next, the Court turns to the last private interest factor. This factor requires the Court to consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. Such practical problems require an evaluation of how the court system is best served by the outcome of the motion. *In re Apple, Inc.*, 581 F. App'x at 889. Defendant contends this factor is neutral, which Plaintiff does not rebut. ECF No. 46 at 15. As such this factor fails to support transfer and is at best neutral.

## IV.  THE PUBLIC INTEREST FACTORS

Next, the Court turns to the public interest factors affecting transfer. Defendants only argue that the local interest factor favors transfer and claims the remaining factors are neutral. ECF No. 21 at 13. Plaintiff claims the local interest and court congestion factors favor the Western District of Texas. ECF No. 90 at 19-20.

### A.     The administrative difficulties flowing from court congestion.

The first public interest factor for the Court to address is the administrative difficulties flowing from court congestion. The parties seem to agree that the time to trial is faster in this district. Defendants even admit that the median time from filing to trial for civil cases is 28.8 months, whereas it is 25.4 months in WDTX. ECF No. 46 at 15. The Court finds that, to the extent this factor is given any weight, it does not weigh in favor of transfer.

**B.      The local interest in having localized interests decided at home.**

Next, the Court turns to the local interest in adjudicating local disputes factor. Defendant argues "Meta is headquartered in NDCA ███████████████████████████, and ████████ ██████████████████████████████████████████ ECF No. 46 at 15. Plaintiff argues that "this dispute's *specific* ties to WDTX outweigh Defendants' general presence in NDCA" and "heavily disfavors transfer." ECF No. 90 at 20 (emphasis in original). Plaintiff claims that Mr. Carmack's development of the critical technology in Dallas, as well as a "substantial, continuous presence of Meta/Facebook for over a decade in WDTX" with █████ ████████████████████████████████████ that were in furtherance (at least partially) of the Accused Products. Plaintiff also notes that Twisted Pixel, a defendant in this case, is located in WDTX, ████████████ its team is located there, and Path of the Warrior was developed there. In sum, the Court is confronted with dueling local interests. Arguably, the local interest in this case weighs slightly in favor of WDTX but is at best neutral and does not favor transfer.

**C.      The "familiarity with law" and "conflict of law."**

Both parties agree these factors are neutral. ECF No. 46 at 15, ECF No. 90 at 20. The Court therefore finds these factors neutral, which fails to support transfer.

**V.  Conclusion**

After balancing the private and public interest factors, considering the briefings and oral arguments, and evaluating the credibility of the evidence, Defendants have failed to carry their high burden of showing that transfer to the Northern District of California is clearly more convenient. The Court is unpersuaded that Defendants have met the threshold test for transfer, and even if they had, a proper weighing of the private and public interest factors fail to show that NDCA is clearly more convenient.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Transfer Venue to the Northern District of California (ECF No. 46) is **DENIED**.

SIGNED this 28th day of November, 2023.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE